IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and HOWARD McDOUGALL, trustee, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.  07 C 6486 |
| v. | ) ) | Judge Hart |
| MERRILL'S CONTRACTORS, INC., an Illinois corporation, | ) ) ) ) | Magistrate Judge Mason |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT
OF THEIR MOTION FOR SUMMARY JUDGMENT**

NOW COME Plaintiffs, Central States, Southeast and Southwest Areas Pension Fund (the "Pension Fund") and Howard McDougall, trustee (collectively "Central States"), by and through their undersigned counsel, and hereby submit Plaintiffs' Memorandum in Support of their Motion for Summary Judgment.

**I.  INTRODUCTION**

The Pension Fund filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, to collect *interim* withdrawal liability payments. Defendant, Merrill's Contractors, Inc. ("Merrill's") triggered four statutory withdrawals from the Pension Fund - three partial withdrawals between 2001 and 2004 and a complete withdrawal in 2005.

The merits of the underlying withdrawal liability assessment are pending before the American Arbitration Association and are not at issue in this case since MPPAA creates a "pay now, dispute later" rule. This action was filed to compel Merrill's, to comply with their statutory obligations to make withdrawal liability payments while the arbitration is pending. The material facts are undisputed. For the reasons set forth below, Central States is entitled to summary judgment as a matter of law.

## II.  BACKGROUND

### A.  Statement of Facts

The Pension Fund is a non-profit, multiemployer pension plan. (Plaintiffs' L.R. 56.1(a)(3) Statement of Material Facts ("Pl. SMF"), ¶ 3.) Plaintiff Howard McDougall is a trustee of the Pension Fund and he and his fellow trustees are the fund's plan sponsor. (Pl. SMF, ¶ 4.) Merrill's is a corporation s organized under the laws of Illinois. (Pl. SMF, ¶¶ 5.)

For a number of years, Merrill's was subject to collective bargaining agreements executed with various unions affiliated with the International Brotherhood of Teamsters pursuant to which it was required to make contributions to the Pension Fund on behalf of some of its employees. (Pl. SMF, ¶ 6.)

<u>Count I (2001 Partial Withdrawal)</u>

On or about December 31, 2001 Merrill's incurred a 70-percent contribution decline pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1) and triggered a "partial withdrawal" pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1). (Pl. SMF, ¶¶ 7 - 8.) As a result of the partial withdrawal, Merrill's incurred withdrawal liability to the Pension fund in the total amount of $15,331.65, as determined pursuant to § 4201(b) of ERISA, 29 U.S.C. § 1381(b). (Pl. SMF, ¶ 9.)

<u>Count II (2003 Partial Withdrawal)</u>

On or about December 31, 2003 Merrill's incurred a 70-percent contribution decline pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1) and triggered a "partial withdrawal" pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1). (Pl. SMF, ¶¶ 10 - 11.) As a result of the partial withdrawal, Merrill's incurred withdrawal liability to the Pension fund in the total amount of $6,832.21, as determined pursuant to § 4201(b) of ERISA, 29 U.S.C. § 1381(b). (Pl. SMF, ¶ 12.)

<u>Count III (2004 Partial Withdrawal)</u>

On or about December 31, 2004 Merrill's incurred a 70-percent contribution decline pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1) and triggered a "partial withdrawal" pursuant to § 4205(a)(1) of ERISA, 29 U.S.C. § 1385(a)(1). (Pl. SMF, ¶¶ 13 - 14.) As a result of the partial withdrawal, Merrill's incurred withdrawal liability to the Pension fund in the total amount of $67,308.40, as determined pursuant to § 4201(b) of ERISA, 29 U.S.C. § 1381(b). (Pl. SMF, ¶ 15.)

<u>Count IV (2005 Complete Withdrawal)</u>

On or about September 24, 2005, Defendant Merrill's permanently ceased to have an obligation to contribute to the Pension Fund thereby effecting a "complete withdrawal" as defined in Section 4203 of ERISA, 29 U.S.C. § 1383. (Pl. SMF, ¶¶ 16 - 17.) As a result of the complete withdrawal, Merrill's incurred withdrawal liability to the Pension fund in the total amount of $31,102.51 as determined under Section 4201(b) of ERISA, 29 U.S.C. § 1381(b). (Pl. SMF, ¶ 18.)

On or about November 10, 2006, Merrill's received a notice and demand for payment issued by the Pension Fund in accordance with Sections 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. § 1382(2) and 1399(b)(1) with respect to each of the four withdrawal liability assessments. (Pl. SMF, ¶ 19.) Each notice and attached invoice notified the

employer of the amount of its withdrawal liability, and that it was required to discharge its liability in monthly payments pursuant to the schedule of payments attached to the notice and demand for payment. (Pl. SMF, ¶ 20.)

By letter dated December 20, 2006, Merrill's received a notice that its withdrawal liability payments were past due under each demand for payment, and which cautioned Merrill's of the consequences of its failure to pay sums due under such liability pursuant to § 4219(c)(5)(A) of ERISA, 29 U.S.C. § 1399(c)(5)(A). (Pl. SMF, ¶ 21.)

Merrill's filed a demand for arbitration to contest the assessment pursuant to Section 4221(a), 29 U.S.C. § 1401(a). (Pl. SMF, ¶ 22.)  That arbitration is currently pending before the American Arbitration Association. (Pl. SMF, ¶ 22.)

Although MPPAA requires Merrill's to timely remit payments while the request for review and/or arbitration is pending, it failed to do so. (Pl. SMF, ¶ 23.) Accordingly, the Pension Fund was forced to file this suit to collect the past due interim withdrawal liability payments and to compel Merrill's to comply with their statutory obligations.

### B.    Statutory Background

Congress enacted ERISA in 1974 to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds had been accumulated in them. *Concrete Pipe and Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 607, 113 S.Ct. 2264, 2271 (1993). Congress wanted to guarantee that if a worker had been promised a defined pension benefit upon retirement, he would actually receive it upon it becoming vested. *Id.*

To address the debilitating effect that employer withdrawals have on multiemployer plans, Congress passed MPPAA in 1980, 29 U.S.C. §§ 1381-1461. *Central States, Se. &*

*Sw. Areas Pension Fund v. Nitehawk Express, Inc.*, 223 F.3d 483, 486 (7th Cir. 2000). MPPAA provides that when an employer withdraws from a multiemployer plan, it must pay "withdrawal liability" in an amount roughly equal to its proportionate share of the plan's unfunded vested benefits, which is the difference between the present value of a pension plan's assets and the present value of the benefits it will be obligated to pay in the future. *Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 217, 106 S.Ct. 1018, 1022 (1986); 29 U.S.C. §§ 1381, 1391.

MPPAA imposes withdrawal liability on an employer to ensure that "the financial burden of his employees' vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation, which insures such benefits." *Central States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1371 (7th Cir. 1992). Employers become obligated to pay withdrawal liability only when they "withdraw" from the pension plan – that is, when they completely cease making contributions to the plan on behalf of their employees, or reduce their obligations in such a way as to trigger a "partial" withdrawal. 29 U.S.C. §§ 1383, 1385.

To collect withdrawal liability, a plan must first determine the amount of withdrawal liability owed by a withdrawing employer. 29 U.S.C. § 1382; *Central States, Se. & Sw. Areas Pension Fund v. Bell Transit Co.*, 22 F.3d 706, 707 (7th Cir. 1994). The plan must then send the employer a notice and demand for payment. 29 U.S.C. § 1399(b)(1); *Bell Transit*, 22 F.3d at 707. The employer may ask the plan to review its assessment. 29 U.S.C. § 1399(b)(2); *Bell Transit*, 22 F.3d at 707. If dissatisfied with the review, the employer may initiate arbitration to challenge the withdrawal liability assessment. 29 U.S.C. § 1401(a)(1); *Bell Transit*, 22 F.3d at 707.

Even if the employer requests review or initiates arbitration, MPPAA establishes a "pay now, dispute later" scheme under which an employer must pay the withdrawal liability in accordance with the payment schedule set forth by the plan until liability is finally determined. 29 U.S.C. §§ 1399(c)(2), 1401(d); *Central States, Se. & Sw. Areas Pension Fund v. Bomar National, Inc.*, 253 F.3d 1011, 1015 (7th Cir. 2001). This statutory mandate applies notwithstanding any arguments or defenses the employer may raise in the review request or arbitration to challenge the underlying withdrawal liability assessment. 29 U.S.C. § 1399(c)(2).

### III.  ARGUMENT

#### A.  Summary Judgment Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006). The existence of "some metaphysical doubt as to the material facts" is insufficient. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

> **B.     The Pension Fund Is Entitled To Summary Judgment Because Interim Payments Must Be Made Regardless Of Whether A Dispute Exists Regarding The Revised Withdrawal Liability.**

Because all disputes concerning the merits of every assessment must be resolved in arbitration, the elements of a claim for interim payments are very simple. Did the fund demand payments pending arbitration? Did the employer make the interim payments as demanded?

The material facts are undisputed. The Pension Fund demanded payment of the withdrawal liability, but Merrill's failed to timely pay all of the required payments. Under MPPAA, it is clear that the Pension Fund is entitled to summary judgment.

As discussed above, even if the employer requests review or initiates arbitration to challenge the withdrawal liability, the employer must either pay the entire amount of the withdrawal liability or make periodic payments as determined by the plan. *Bell Transit*, 22 F.3d at 707. Specifically, MPPAA provides as follows:

> Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.
>
> *****
>
> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration ...

29 U.S.C. §§ 1399(c)(2), 1401(d). The requirement that the employer make interim payments (interim in the sense that they are due between the time a fund sends out the notice and demand and the final determination of liability) sets up a "pay now, dispute later" scheme. *Bomar*, 253 F.3d at 1015; *see also Central States, Se. & Sw. Areas Pension Fund v. Wintz Properties, Inc.*, 155 F.3d 868, 876 (7th Cir. 1998). The statute "calls on the employer to pay 'notwithstanding' contentions that may prevail in the end. The MPPAA

puts payment ahead of decision." *Trustees of the Chicago Truck Drivers, Helpers & Warehouse Workers Union (Independent) Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 118 (7th Cir. 1991).

The theory behind the interim payment requirement was stated by Judge Easterbrook in *Central Transport*:

> Consider why Congress gave pension funds the right to hold the stakes while arbitrators resolve the disputes. Trucking is a competitive business. Many of the firms are small and thinly capitalized. During the time consumed by the arbitration and any proceedings to review or enforce the award, some will go out of business. The employers most likely to feel the pinch of interim payments are those skating closest to the edge, posing the greatest risk to the plans if payment is deferred. Other employers, not at risk of insolvency, may distribute assets during the interim, making collection difficult even if the pension plan prevails. In either case, the trust is left with the obligation to the workers without a corresponding source of funds. Much of pension law is designed to alleviate this risk. Although the trust bears substantial risk if the employer holds the stakes pending final resolution, the employer faces no corresponding risk if the fund holds the stakes. Pension trusts are solvent, diversified, regulated institutions. Short of a collapse comparable to 1929, funds will be able to repay any withdrawal liability that a court or arbitrator ultimately determines they should not have collected.
>
> Reduction in the risk of non-payment is not the only rationale for letting pension funds hold the stakes. Arbitration is supposed to speed final decision and reduce the costs of getting there. Efforts to alleviate the "harshness" of the MPPAA by examining the employer's probability of success before the arbitrator frustrate achievement of that objective. Instead of one speedy decision, there will be three slow ones. First the employer will resist making interim payments; the district judge will have to examine the merits of the plan's claim to determine the employer's probability of success before the arbitrator. Next the arbitrator will take evidence and decide. Finally, the loser will return to court and ask the judge to set aside the arbitrator's decision. Such a sequence would make a mockery of the MPPAA, would be worse (more costly, more time-consuming) than leaving the entire decision to the court in the first place.

935 F.2d at 118-19 (citations omitted).

The court in *Wintz Properties* emphasized that "federal judges 'have no equitable power to excuse interim payments.'" *Id.* at 875 (citing *Central Transport*, 935 F.2d at 119).

Instead, the Seventh Circuit has made it clear that interim payments must be made "regardless of the nature of an employer's challenge to the underlying withdrawal liability." *Robbins v. Lady Baltimore Foods, Inc.*, 868 F.2d 258, 263 (7th Cir. 1989).

Here, it is undisputed that Merrill's has triggered four different withdrawals from the Pension Fund and that it received a notice and demand for payment of each of the four withdrawal liability assessments. It is also undisputed that Merrill's failed to make all of the required payments to the Pension Fund in a timely manner. Thus, Merrill's has violated the statutory procedure for making withdrawal liability payments.

The fact that Merrill's has demanded arbitration concerning the withdrawal liability is of no consequence due to the "pay now, dispute later" provisions of the statute. Merrill's has asserted five different affirmative defenses. Each of defenses must be resolved in the pending arbitration and the facts related to those defenses are not *material* in this action that seeks only interim payments.

### C. The Pension Fund Is Entitled To Interest, Liquidated Damages, Costs, And Attorney's Fees.

In addition to the principal amount of the past due withdrawal liability payments, the Pension Fund is entitled to recover interest on the missed interim payments, liquidated damages, costs and attorneys' fees pursuant to § 1132(g)(2).

In MPPAA collection actions, delinquent withdrawal liability payments are treated as delinquent employer contributions and thus are enforceable under Title I of ERISA. 29 U.S.C. § 1451(b). Under Title I, when a plan obtains a judgment for delinquent contributions, "the court shall award the plan" the unpaid contributions, interest thereon, fees, costs, and the greater of an amount equal to the interest or liquidated damages in the amount of 20% of the unpaid amounts. 29 U.S.C. § 1132(g)(2). The damages awarded

under § 1132(g)(2), made applicable to cases involving withdrawal liability pursuant to § 1451(b), are mandatory. *Slotky*, 956 F.2d at 1377. The liquidated damages awarded under MPPAA are something that an employer "must pay as a penalty for refusing to follow the statutory procedure for challenging assessments of withdrawal liability." *Lady Baltimore Foods*, 960 F.2d at 1347.

Liquidated damages are owed if there is unpaid principal at the time suit is filed even if amounts are paid during the pendency of the suit. *Northwest Administrators, Inc. v. Albertson's, Inc.*, 104 F.3d 253, 257-58 (9th Cir. 1996); *see also Operating Engineers Local 139 Health Benefit Fund v. Gustafson Constr. Corp.*, 258 F.3d 645, 654 (7th Cir. 2001) (interest and liquidated damages provisions apply to contributions unpaid at date of suit); *Chicago Dist. Council of Carpenters Pension Fund v. Industrial Erectors, Inc.*, 840 F. Supp. 1248, 1255 (N.D. Ill. 1993) (damages are owed with respect to delinquencies occurring after filing of the complaint). Consequently, the Pension Fund requests that the Court award it interest on the past due payments, liquidated damages, costs and attorney's fees.

### IV.  CONCLUSION

Merrill's cannot refuse to make interim payments while any challenges or defenses to withdrawal liability are contested in arbitration. The refusal of Merrill's to pay has already caused a substantial delay in payments that MPPAA seeks to prevent. As the Seventh Circuit has declared, "[t]he law should be clear enough by now to avoid the necessity of a suit like the Fund's [to collect interim withdrawal liability payments]." *Wintz Properties*, 155 F.3d at 876.

Here, the undisputed facts establish that Merrill's: (1) has triggered four different withdrawals from the Pension Fund; (2) received a Notice and Demand for payment of the withdrawal liability for each of these four withdrawals; and (3) failed to make all (indeed

any) of its statutorily mandated payments in a timely manner.  The Pension Fund is entitled to summary judgment in its favor against Merrill's for the past due interim payments plus interest, costs, attorney's fees and liquidated damages. Furthermore, the Pension Fund asks the Court to order Merrill's to make all future interim payments as scheduled. Plaintiffs request two weeks from the date of this Court's order to submit affidavits and a proposed judgment order to establish these amounts.[1]

Respectfully submitted,

 s/ Thomas M. Weithers
Thomas M. Weithers
A.R.D.C. 06193004
Attorney for Plaintiffs
Central States, Southeast and
Southwest Areas Pension Fund
9377 W. Higgins Road
Rosemont, Illinois  60018-4938
847/518-9800, Ext. 3276

May 9, 2008

---

[1] Plaintiffs have not provided evidence establishing these amounts because both the amount of delinquent payments and interest due change on a monthly, or in the case of interest, on a daily basis. Thus, any amounts provided today would be inaccurate on the date a judgment is entered in this case.

F:261650 / 07410026 / 5/9/08                -11-

## **CERTIFICATE OF SERVICE**

I, Thomas M. Weithers, one of the attorneys for the Central States, Southeast and Southwest Areas Pension Fund, certify that on May 9, 2008, I electronically filed the foregoing Plaintiffs' Memorandum In Support Of Their Motion For Summary Judgment with the Clerk of the Court using the ECF system. This filing was served on all parties indicated on the electronic filing receipt via the ECF system.

                                                  Respectfully submitted,

                                           s/ Thomas M. Weithers
                                          Thomas M. Weithers
                                          A.R.D.C. 06193004
                                          Attorney for Plaintiffs
                                          Central States, Southeast and
                                          Southwest Areas Pension Fund
                                          9377 W. Higgins Road
                                          Rosemont, Illinois  60018-4938
May 9, 2008                             847/518-9800, Ext. 3276